UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN LAMAR CHOYCE, | No. C 11-1605 CRB (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| T. GONZALES, Warden, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a pro se state prisoner. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, an Alameda County Superior Court jury found petitioner guilty of felony sexual offenses against four female adult victims, Jane Does 1–4. Consequent to the verdicts, petitioner was sentenced to 358 years-to-life. Petitioner sought, though was denied, relief on state judicial review. This federal habeas petition followed.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

**I.   Denial of Petitioner's Motions**

Petitioner claims that the trial court violated his due process and Sixth Amendment rights when it (A.) failed to conduct a full hearing on his July and October 2006 motions to

change counsel, and (B.) denied his motion to appoint himself as co-counsel.

     **A.**     **Motions to Change Counsel**

          **1.**     **July 2006**

The relevant facts are as follows. Petitioner's trial began in January 2007. Six months before trial, in July 2006, the trial court denied petitioner's motion to change counsel with the words, "The court has read and considered [petitioner's] motion and it is denied." At that same court appearance, the trial court conferred with defense counsel about a motion to suppress she had filed. The matter was continued until the following week, at which time the trial court stated that the motion to change counsel "is denied on the papers." (Ans., Ex. D at 13.) Petitioner claims that the trial court failed to provide him with a sufficient hearing on his motion to change counsel, in violation of his right to due process and his right to counsel.

The state appellate court rejected petitioner's claim, concluding that the trial court did not abuse its discretion in deciding the motion on the papers. First, defense counsel's filing of a suppression motion "demonstrated adequate representation at that point in the proceeding," thus providing grounds on which the trial court could deny petitioner's motion. Second, the trial court was justified in deciding the motion on the papers because petitioner's complaints about defense counsel — that she had not been to see him and had not conducted an investigation — were premature, being made months before trial. Not only would defense counsel have time to address petitioner's concerns, her filing of the suppression motion indicated that she was rendering adequate representation. (Id. at 14–15.)

When a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. However, the inquiry only need be as comprehensive as the circumstances reasonably permit. King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992). In determining whether the trial judge should have granted a motion for substitution of counsel, the reviewing habeas court may consider the extent of the conflict, whether the trial judge made an appropriate inquiry

into the extent of the conflict, and the timeliness of the motion to substitute counsel. Daniels v. Woodford, 428 F.3d 1181, 1197–98 (9th Cir. 2005). The ultimate inquiry is whether the petitioner's Sixth Amendment right to counsel was violated. Schell v. Witek, 218 F.3d 1017, 1024–25 (9th Cir. 2000). In other words, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [the criminal defendant's] constitutional rights in that the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

Petitioner's claim lacks merit. Petitioner has no right to a full hearing on such a motion because the inquiry need be only as comprehensive as the circumstances reasonably permit. The record supports the state appellate court's determination that the inquiry was sufficiently comprehensive. Trial being months ahead, petitioner's complaints were premature, and thus a full hearing was unwarranted. Such conclusion is bolstered by the fact that defense counsel was acting as a diligent representative, as evidenced by her filing of the suppression motion. Such circumstances also defeat any claim that petitioner's Sixth Amendment rights were violated. Accordingly, petitioner's claim is DENIED for want of merit.

### 2. October 2006

The relevant facts are:

> On October 25, 2006, [petitioner] mailed another motion for substitution of counsel to the court. This motion, dated October 21, 2006, noticed the motion for hearing on October 21, 2006 as well. Once more, [petitioner] checked every box on the form declaration, listing the same failures of his counsel as in his July 2006 motion . . . The record is unclear as to when the court received this motion . . . The motion was not filed by the court until January 8, 2007. There is no mention in the record of its consideration prior to the commencement [or completion] of the trial.

(Ans., Ex. D at 15.) During trial, petitioner never raised any concerns about this motion. After trial, petitioner moved for a new trial on grounds that included defense counsel's

alleged failure. Such motion was denied. At his April sentencing hearing, petitioner asked the trial court about his pending motion to change counsel, then later indicated that he did not want to pursue such motion. (Id. at 18, 19.)

The state appellate court determined that the trial court erred in not conducting an inquiry into petitioner's motion. Such error, however, was harmless. First, the October motion was based on the same reasons the trial court rejected as inadequate in July, and which were also rejected as inadequate in a motion for a new trial petitioner filed. Second, during trial petitioner failed to raise concerns about defense counsel's performance, indicating that he was satisfied with his defense. Third, petitioner withdrew his October change of counsel motion at his April sentencing hearing. Fourth, the evidence against petitioner was substantial:

> By the time of trial, [petitioner] did not dispute that he had been with each woman at the time she claimed he had assaulted her. Each woman presented a compelling account of [petitioner]'s assault. Their accounts were consistent in a number of respects regarding the methods of force [petitioner] had employed. The accounts of police officers and medical personnel who testified were consistent with the women's accounts as well. There was no evidence that the women were friends, or conspired in any way against [petitioner]. While some of the women at first denied to the police that they were prostitutes, this was understandable given their illegal activity; indeed, in light of this activity, it was more telling that they had complained to police. While there were some discrepancies between some of the women's trial testimony and their previous accounts, which his counsel brought out at trial, they were relatively minor matters.
>
> On the other hand, [petitioner] was not credible. He acknowledged at trial that he had previously lied to police, not telling them that he had had encounters with Jane Doe 1, Jane Doe 2 and Jane Doe 4, and that he had lied to police when he had told them that Vinnie Brooks was robbing him on the night of their encounter. His explanations that he was confused regarding other inaccurate answers were far from convincing, as was his claim that some of his trial account about his encounter with Jane Doe 2 was missing from a recorded interview with police because he discussed the matter with them when the recorder was off. Likewise, [petitioner]'s suggestions of the various motivations of the women to falsely accuse him of rape, such as that Jane Doe 2 was out to get him because he would not pay her an additional $20 dollars for their consensual encounter, or that Jane Doe 4 was angry with him because he would not drive her to a place where she could get drugs, did not make sense.

(Id. at 19–20.)

On such a record, petitioner's claim fails. His failure to raise complaints about counsel during trial indicates that he was satisfied with defense counsel's trial performance, a conclusion bolstered by his later withdrawal of his pending motion to change counsel. Also, the grounds for the October motion were twice rejected by the trial court, both in its ruling on his July motion, and in his new trial motion. Such a record does not show that a conflict existed between defense counsel petitioner such that he was denied his right to counsel under the Sixth Amendment. Furthermore, the strength of the evidence supportive of petitioner's guilt defeats any possibility of the granting of relief. As the state appellate court noted, the victims testified consistently and, apparently, credibly, while petitioner was not a credible witness. In sum, petitioner has not shown that he suffered prejudice because his October motion was not heard. Accordingly, his claim is DENIED for want of merit.

### B.     Co-Counsel Motion

Petitioner mailed a motion to the court in September 2006 in which he asked to be named co-counsel, with defense counsel to act as lead counsel. It appears that the trial court never considered such motion. Petitioner claims that this failure violated his constitutional rights. Regarding such motion as another change of counsel motion, the state appellate court rejected petitioner's claim on the same grounds on which it rejected his claim regarding his October 2006 motion. Such determination by the state appellate court was reasonable. Accordingly, petitioner's co-counsel motion claim is DENIED on the same grounds as the prior claim.

## II.     Admission of Testimony

Petitioner claims that the trial court violated his due process right to a fair trial by allowing the testimony of three expert witnesses, namely, Hillary Larkin, Lauri Paolinetti, and Officer Keeley. The state appellate court found petitioner's arguments "unpersuasive." (Ans., Ex. D at 22.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial

of the fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). He would have to show that the error had "'a substantial and injurious effect' on the verdict." Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623). Habeas relief may be granted, however, only if there are no permissible inferences that the jury may draw from the evidence. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

### A.     Hilary Larkin

Petitioner claims that the trial court violated his due process rights when it allowed the testimony of Hilary Larkin. Larkin, a physician's assistant who examined Jane Doe 4, testified at trial as a prosecution expert witness that Doe 4's injuries were consistent with nonconsensual intercourse. During voir dire of her expertise, Larkin testified that she had training in pelvic examinations, performed 30 such examinations a year, reviewed 350 sexual assault victim examinations each year, taught forensics and sexual assault examinations to medical residents and postgraduate physicians, and had 20 years of experience in actually performing pelvic examinations. Larkin also testified that she had read various studies on this topic, and that she was in the process of completing a study of her own that looked at "consensual intercourse patients versus sexual assault patients." Regarding the victim, Larkin testified that Doe 4's injuries were consistent with her statements that she had been sexually penetrated by a penis and finger. (Ans., Ex. D at 24.)

Petitioner claims that Larkin lacked a sufficient basis for her opinion. According to petitioner, Larkin (1) based her opinion on studies whose details she could not recall; (2) manipulated her own study, thereby making it an unsound basis for an expert opinion; and (3) failed to adequately address whether Doe 4's injuries were the result of consensual sex. According to the state appellate court, petitioner ignores the fact that Larkin's testimony was "based primarily on years of conducting pelvic examinations and her review of [Sexual

Assault Response Team] files." "Larkin's extensive experience was an ample basis to provide an expert opinion" on the likely cause of Doe 4's injuries." (Ans., Ex. D at 28.)

The state appellate court reasonably determined that Larkin's years of experience and training in pelvic examinations — facts undisputed by petitioner — were a sufficient basis on which to render an opinion as to the likely cause of Doe 4's injuries. On this record, not only has petitioner failed to show that his due process rights were violated in this instance, this Court is precluded from granting habeas relief because there were permissible inferences the jury could draw from the evidence, viz., that Doe 4's injuries were consistent with injuries suffered by sexual victims. See Jammal, 926 F.2d at 920. Accordingly, petitioner's claim is DENIED without merit.

## B.     Lauri Paolinetti

Petitioner claims that the trial court violated his due process rights when it allowed the testimony of Lauri Paolinetti. Paolinetti, a physician's assistant who examined Jane Doe 3, testified at trial as a prosecution expert witness that she found semen on Doe 3's left and inner thighs, and above her pubic hair. She also testified that she found "no evidence of edema, abrasions, tears, or other injuries." She also testified, however, that "there are not always injuries associated with nonsensual sex." (Ans., Ex. D at 29.)

Petitioner does not dispute Paolinetti's qualifications to conduct an exam or to testify about her findings. Rather, petitioner objects to her opining that the presence of semen on the victim's abdomen was consistent with Doe 3's story that she had been attacked. Such statements constituted testimony that Doe 3 not only was credible, but that she had in fact been attacked.

The state appellate court rejected this claim as "meritless":

Paolinetti was not asked, and did not state, her view of Jane Doe 3's credibility, and her testimony was not offered to establish the truthfulness of Jane Doe's account . . .

Finally, [petitioner] argues that Paolinetti, "by testifying in a manner that was clearly supportive of Jane Doe 3's position . . . provided an impermissible — and unconstitutional — opinion on [petitioner]'s guilt." Again, the record does

> not provide support for this argument. Paolinetti fully explained her findings, including the absence of physical injuries, which did not necessarily "support" Jane Doe 3's position. She did not opine at all about [petitioner]'s guilt.

(Ans., Ex. D at 31.)

The state court reasonably determined that the trial court's admission of Paolinetti's testimony did not violate petitioner's constitutional rights. Paolinetti testified as to matters within her personal knowledge and experience, and offered no opinion on petitioner's guilt. Petitioner was free to challenge such testimony. Petitioner, then, has not shown that any specific constitutional guarantee was violated. Also, the claim must be DENIED because the jury could draw a permissible inference from Paolinetti's testimony, viz., that semen was recovered from her body near to the time after the attack.

### C. Officer Keely

Petitioner claims that the trial court violated his due process rights by twice permitting Officer Keely to act as both percipient and expert witness and engage in improper speculation. The relevant facts are:

> Keely testified that he talked with Jane Doe 1 in her apartment on the night of the incident, who told him she had been sexually assaulted earlier that evening. When the prosecutor asked him to describe Jane Doe 1's "emotional state while you were talking to her," the defense objected that this called for speculation and conclusion, which objections the court overruled. Keely testified that Jane Doe 1 "was crying, she was upset, obviously distraught. I spoke with her for quite some time and her emotions were the same throughout. She was constantly bending over and covering herself. She was partially dressed so she was covering — doubled over, quite consistent with someone who went through a traumatic event." The defense moved to strike this testimony as a conclusion, which the court denied.
>
> On cross-examination, the defense asked Keely what physical factors about Jane Doe 1 made him think she was upset. Among other things, Keely stated: "She was bending over crossing her arms over, holding herself more like a fetal-type position or something, something that I've seen like people that are — want to cover themselves up or something like that, especially after a violent crime, I see that a lot. [¶] She wasn't open with her shoulders out speaking so you could obviously tell that she was very upset. And her voice was not — it was down, it was — she didn't want to speak, you know, quick and high. Very consistent with somebody that had gone through a traumatic event." The defense moved to strike Keely's testimony that what he observed was very consistent with someone who had been through a traumatic event "as speculation and expert testimony which this officer is not qualified to render." In response to the court's own questions, Keely indicated that he had seen

people go through traumatic events, and that he had been an officer in Oakland for over seven years. The court then overruled the defense's objections.

(Ans., Ex. D at 31–32.) Petitioner contends that Keely offered inadmissible expert opinion when he testified that Doe 1's physical demeanor was consistent with someone who had recently experienced a traumatic event. As a police officer, he was not entitled to give such an opinion. Such testimony amounts to a conclusion that Doe 1 was credible and that petitioner was guilty. The state appellate court rejected petitioner's claim on grounds that Keely's testimony did not cause the effect petitioner describes. Keely never stated or implied that he believed Doe 1's story, nor did he give any indication that he believed defendant was the cause of her trauma. (Id. at 33.)

The state appellate court reasonably determined that petitioner's constitutional rights were not violated. It was reasonable to conclude that Keely did not indicate that he believed Doe's story — he testified only that she exhibited signs consistent with a person having experienced trauma — or that petitioner was the cause of that trauma. Furthermore, because the jury could make the permissible inference that Keely observed Doe 1 exhibit physical signs of trauma, this Court is barred from granting habeas relief. Accordingly, petitioner's claim is DENIED.

### III. Flight Instruction

The evidence of flight was as follows:

> [A]bout two months after the assault, [Jane Doe 4] was in a car with her boyfriend, Alvin Walker, when she saw [petitioner] in his car around 9:00 p.m. [Footnote omitted.] Walker wanted to kill [petitioner] and Jane Doe 4 wanted him to "go down" for what he had done to her. They followed [petitioner] onto the freeway and called California Highway Patrol (CHP). [Petitioner] threw things out of his sunroof at them, and later pulled over to the side of the freeway and came towards them. Multiple CHP units arrived and detained [petitioner] after he tried to climb a fence. She identified him as her attacker.

(Ans., Ex. D at 9.) Doe 4 testified that petitioner did not at first know she was following him, but that her boyfriend later made him aware that Doe 4 was chasing him. Doe 4 does not specify how her boyfriend made petitioner aware of this fact. (Id., Ex. G, Vol. 2 at 357–58.)

The trial court instructed the jury with a modified version of CALCRIM No. 372 ("Defendant's Flight"):

> If the [petitioner] fled or tried to flee, that conduct may show that . . . he was aware of his guilt. If you conclude that the [petitioner] fled or tried to flee, it is up to you to decide the meaning and importance of that conduct; however, evidence that the [petitioner] fled or tried to flee cannot prove guilt by itself.

(Ans., Ex. G, Vol. 10 at 1558.) Petitioner claims that the trial court violated his rights by omitting the following portion of No. 372: "If the defendant fled [or tried to flee] (immediately after the crime was committed/ [or] after (he/she) was accused of committing the crime), that conduct may show that (he/she) was aware of (his/her) guilt." (Pet., Mem. of P. & A. at 63.) By failing to include such instruction, the trial court conformed the instruction to the evidence, which in turn, "gave the jury express permission to consider a flight wholly unrelated to the instant charges as evidence of guilt."[1] (Id. at 72.)

The state appellate court found the error harmless, and rejected petitioner's claim:

> First, the court did not instruct the jury that flight had occurred; rather, both the existence and significance of any flight or attempted flight were left to the jury to determine. [Citation omitted.] The court also instructed the jury that it was to review the evidence and determine for itself "what the facts are," and that "[s]ome of these instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you've decided what the facts are, follow the instructions that do apply to the facts as you find them." The "flight" instruction itself stressed to the jury that even if there was evidence of flight or attempted flight from which it could infer a consciousness of guilt, this alone was not sufficient evidence to convict [petitioner]. [Citation omitted.]
>
> Second, the prosecutor's closing argument did not focus at all on [petitioner]'s attempted flight. [Citation omitted.] The prosecutor did not refer to consciousness of guilt based on flight or on any desire by [petitioner] to avoid detection by the police.
>
> Third, as we have discussed, there was significant evidence that [petitioner] attempted to flee the police out of a consciousness of guilt for his assault against Jane Doe 4, after she had accused him of the crime to police and after he saw her chasing him.

---

[1] This is the one cognizable claim here. Petitioner's remaining claims are outside federal habeas review because they concern violations of state law. See Swarthout v. Cooke, 131 S. Ct. 859, 861–62 (2011).

1    Fourth, as we have also discussed, overall there was a strong case against [petitioner].
2  (Ans., Ex. D at 39–40.)

3    An instruction that merely creates a permissive inference, such as the one at issue
4  here, does not shift the burden of proof, but it nonetheless violates due process unless it can
5  be said "'with substantial assurance'" that the inferred fact is "'more likely than not to flow
6  from the proved fact on which it is made to depend.'" County Court of Ulster County v.
7  Allen, 442 U.S. 140, 167 & n.28 (1979) (quoting Leary v. United States, 395 U.S. 6, 36
8  (1969)). Even if the disputed instruction violates due process, a petitioner cannot obtain
9  relief if the unconstitutional inference instruction resulted in actual prejudice under Brecht.
10 Patterson v. Gomez, 223 F.3d 959, 965–66 (9th Cir. 2000). Actual prejudice exists if the
11 unconstitutional instruction had a "substantial influence on the conviction." Brecht, 507 U.S.
12 at 637–38.

13   This Court cannot agree with the state appellate court's determination that there was
14 "significant evidence" that petitioner fled from police out of consciousness of guilt. The
15 "flight" occurred two months after the attack, and there is little evidence that petitioner knew
16 Doe 4 was chasing him, and little evidence that he thought the CHP were chasing him
17 because of her allegations. Therefore, it cannot be said with "substantial assurance" that the
18 inferred fact is more likely than not to follow from the proved fact.

19   Petitioner, however, is not entitled to relief, as there has been no showing of actual
20 prejudice. As the state appellate court spelled out in detail, there was substantial evidence of
21 petitioner's guilt. Accordingly, this claim is DENIED.

22 **IV.  Cumulative Error**

23   Petitioner's claim that habeas relief should be granted on the ground that the
24 cumulative effect of all the errors at trial was prejudicial is DENIED. The state appellate
25 court's determination that there was no cumulative prejudicial error was reasonable. (Ans.,
26 Ex. D at 41.) The errors that occurred at trial — the trial court's handling of motions to
27 change counsel or the flight instruction — are not individually sufficient to show prejudice,
28

nor are they sufficient to show prejudice when taken in the aggregate. See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir. 2003).

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: March 7, 2012

CHARLES R. BREYER
United States District Judge